UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KEITH TRAPPETT, and individual; ETHEL "JACKIE" TRAPPETT, an individual; and CINDY BEARDIN, as personal representative of the ESTATE OF MICHAEL TRAPPETT,<br><br>Plaintiffs,<br><br>v.<br><br>CLEARWATER COUNTY, a political subdivision, et.al.,<br><br>Defendants. | Case No. 2:22-cv-00221-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendants Clearwater County, Sheriff Chris Goetz, and Brittany Brokop's (collectively "Defendants") Motion for Summary Judgment. Dkt. 16. Plaintiffs never responded to the Motion.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons set forth below, the Court GRANTS Defendants' Motion.

## II. BACKGROUND

### A. FACTUAL BACKGROUND

At approximately 2:25 a.m. on January 31, 2022, Ethel "Jackie" Trappett ("Jackie"), called Clearwater County Sheriff's Office 911 to report that her son, Michael Trappett, was intoxicated and aggressive. Jackie also indicated Trappett had a large butcher knife in his possession. Officers were dispatched to the residence in Orofino, Idaho.

One of the officers, Clearwater County Deputy Brittany Brokop, had interacted with Trappett the prior August. She had been called to the hospital to assist with a combative patient. During that incident, the combative patient—Trappett—made threatening statements to officers, including a threat to stab Brokop.

Orofino Police Officer Michael Dietrick was the first to arrive on scene. He contacted Trappett's parents. Brokop and another officer, Clearwater County Deputy Randall Carruth arrived a few minutes later. Both of these officers' body cameras captured what happened next.

Brokop and Carruth began searching the premises to locate Trappett. After their search yielding nothing, Deitrick left to see if Trappett was at a nearby home owned by a family member. Brokop and Carruth began speaking with Jackie and Keith Trappett (Michael's elderly father). At approximately 3:04 a.m., the deputies heard someone walking up the driveway and quickly determined it was Trappett.

Brokop said "hi" to Trappett and asked him to show the officers his hands. Trappett walked forward while officers continuously told Trappett to show his hands. Eventually

Trappett removed his right hand from his coat pocket. He was holding the large butcher knife Jackie had previously reported to 911.

Both deputies then instructed Trappett to stop advancing and to drop the knife. Trappett refused, and instead shouted several obscenities and made rude gestures towards the deputies before eventually shouting "shoot me," and "just f\*\*king shoot me." Carruth stated they did not want to shoot Trappett; they just wanted to talk and figure out what was going on.

Trappett then turned and started to walk around the corner of the residence toward the side door. The deputies followed, asking Trappett to stop. He did not. As Brokop came around the corner of the house, Trappett—who was eight to ten feet away from her—turned and raised the knife to an overhead stabbing position. He then advanced towards Brokop. Both deputies opened fire, killing Trappett.

A Notice of Tort Claim was eventually served on Clearwater County, and this lawsuit followed. No bond has been set or posted, either with this Court or with the District Court for Clearwater County. In addition, since the filing of this lawsuit, Jackie has passed away.

### B. PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint on May 24, 2022. Dkt. 1. They filed an Amended Complaint a few months later with six causes of action. Dkt. 6. Pursuant to 42 U.S.C. § 1983, Plaintiffs bring a cause of action for excessive force in violation of the Fourth Amendment (Count I) and for a violation of substantive due process rights as it relates to familial association in violation of the Fourteenth Amendment (Count III). *Id.* at 7–8, 11–

12. An alleged violation under the ADA (Count II) has been included as well. *Id.* at 9–10. Finally, plaintiffs bring state law claims for wrongful death (Count IV), intentional infliction of emotional distress (Count V), and negligent infliction of emotional distress (Count VI). *Id.* at 12–15.

The Parties agreed to a schedule and discovery parameters (Dkts. 12–13) and the Court entered a Scheduling Order on November 29, 2022 (Dkt. 15). Relevant here, the Court set a deadline of July 24, 2023, for the filing of dispositive motions. Dkt. 15, at 1. Very little has happened in this case since that time.[1]

On July 21, 2023, Defendants filed a Motion for Summary Judgment. Dkt. 16. As will be explained more fully below, Plaintiffs never responded.[2] The Court has waited an extended period to afford Plaintiffs every opportunity to comply, but to no avail.

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (cleaned up). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's

---

[1] As an aside, it appears Defendant Randall Carruth was never served in this case. He has not appeared, and Plaintiffs have not taken any action in this regard. All claims against him are, therefore, dismissed.

[2] Defendants certified that they served a copy of their motion and supporting documents on Defense counsel via mail and CM/ECF. Dkt. 17, at 3. The Court's internal data also shows that all documents were correctly emailed to Defense counsel via CM/ECF.

favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (cleaned up).

Accordingly, the Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

### IV. ANALYSIS

The Court begins by noting that procedural grounds exist for granting Defendants' Motion outright. As alluded to, Plaintiffs have wholly failed to respond to Defendants' Motion for Summary Judgment.

District of Idaho Local Civil Rule 7.1(c) outlines that the non-moving party has twenty-one days after service of the moving party's filing to respond in opposition. Defendants filed their Motion for Summary Judgment on July 21, 2023. Accordingly, Plaintiffs response was due on or before August 11, 2023. That day came and went without any filings. The Court has waited many more weeks to give Plaintiffs an opportunity to remedy this deficiency. In the absence of any filing, however, the Court must press forward.

In circumstances such as this—where a party fails to respond to a motion for summary judgment—the Court's duty is outlined by Local Rule 7.1:

> In motions brought under Federal Rule of Civil Procedure 56, if the non-moving party fails to timely file any response documents required to be filed, such failure will not be deemed a consent to the granting of said motion by the Court. However, if a party *fails to properly support an assertion of fact or fails to properly address another party's assertion of fact* as required by Federal Rule of Civil Procedure 56(c) or Local Rule 7.1(b)(1) or (c)(2), the Court *may consider the uncontested material facts as undisputed for purposes of consideration of the motion, and the Court may grant summary judgment* if the motion and supporting materials - including the facts considered undisputed - show that the moving party is entitled to the granting of the motion.

Idaho Dist. Loc. Civ. R. 7.1(e)(2) (emphasis added).

Accordingly, pursuant to Local Rule 7.1, Plaintiffs' failure to timely respond to Defendants' Motion for Summary Judgment renders Defendants factual assertions undisputed for purposes of adjudicating the instance motion and the Court must grant judgment in their favor. The Court will only briefly review those uncontested facts.

First, summary judgment is appropriate on Trappett's § 1983 claims (Claim One and Claim Three) because those claims abated upon his death and his family cannot assert them vicariously on his behalf. As the Ninth Circuit has explained, "constitutional claims are personal and cannot be asserted vicariously." *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) (citation omitted). And while "the survivors of an individual killed as a result of an officer's excessive use of force may assert a Fourth Amendment claim on that individual's behalf," they may only do so "if the relevant state's law authorizes a survival action." *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1228 (9th Cir. 2013). Idaho does not. *Hoagland v. Ada Cnty.*, 303 P.3d 587, 595 (2013). Accordingly, summary

judgment is appropriate on Claim One[3] and Claim Three.[4]

    Second, Plaintiff's ADA claim is somewhat confusing. To the extent this claim is brought against Brokop or Goetz, it fails as a matter of law. *United States v. Georgia*, 546 U.S. 151, 153 (2006) (the proper defendant in an ADA action is the public entity responsible for the alleged discrimination); *see also Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (ADA claims cannot be brought against any individual defendant under § 1983.) And to the extent the claim is brought against Clearwater County, it likewise fails because there is no evidence that Trappett had a disability that would qualify for protection under the ADA. Even if he did has such a disability, the Ninth Circuit has held an ADA claim may arise only when officers either "wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity . . . [or] fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Sheehan v. City and County of San Francisco*, 743 F. 3d 1211, 1232 (9th Cir.

---

[3] Even if Trappett's excessive force claim did not abate upon his death, it would be barred by the doctrine of qualified immunity. Qualified immunity applies unless "existing precedent squarely governs the specific facts at issue," *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018), and those facts would have given the officers "fair notice" that their actions violated established federal law. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). Here, Plaintiffs have proffered nothing to rebut Defendants' evidence that they acted reasonably under the circumstances. Plaintiffs also mention *Monell* liability as part of Claim one. Without delving into this legal doctrine extensively, the Court notes the uncontested facts do now support such a conclusion.

[4] In like manner, even if Trappett's familial due process challenge survived his death, it too fails as a matter of law because Defendants conduct did not rise to the requisite level. *See Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022) ("To determine whether a violation of substantive due process occurred, we look to whether the officers' conduct deprived [Plaintiff] of her familial interest in a manner that shocks the conscience.") (citation omitted). It is, of course, sad (i.e. "shocking") that Trappett died as a result of this encounter. However, the undisputed facts in this case do not shock the conscience or rise to the level necessary to sustain this claim.

2012), *aff'd in part, rev'd in part City & Cnty. Of San Francisco, Calif v. Sheehan*, 575 U.S. 600 (2015). Neither of these theories are applicable here. The facts show that Defendants tried to help Trappett initially, but once he presented a danger, they had to respond (as they would with any person; disability or not). Summary judgment on Count Two is appropriate.

Finally, Plaintiffs' state law claims fail for various reasons. First, prior to initiating a lawsuit against a law enforcement officer, Idaho Code Section 6-610(2) requires a plaintiff to post a bond. Plaintiffs in this case did not post a bond, nor did they request a waiver of that requirement. Second, Idaho Code Section 6-904(3) bars all claims against governmental entities "arising out of an alleged assault and battery . . . [and] applies in wrongful death cases" unless the Plaintiff can show malice or criminal intent. *Blackhawk v. City of Chubbuck*, 488 F. Supp. 2d 1097, 1102–03 (D. Idaho 2006) (*citing Kessler v. Barowsky*, 931 P.2d 641 (Idaho 1997)). The facts here do not show Defendants acted with malice or criminal intent. Finally, Plaintiffs' emotional distress claims fail because, as above, they cannot meet the requisite high standard for either an intentional infliction of emotional distress[5] claim or a negligent infliction of emotional distress[6] claim. Defendants uncontradicted evidence shows they acted reasonably under the circumstances. Thus,

---

[5] "To recover for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the wrongful conduct and the plaintiff's emotional distress, and (4) the emotional distress was severe." *Johnson v. McPhee*, 210 P. 3d 563, 572 (Idaho 2009).

[6] "The elements of negligent infliction of emotional distress are (1) a legal duty recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage." *Frogley v. Meridian Joint Sch. Dist. No. 2*, 314 P.3d 613, 624 (Idaho 2013).

summary judgment is granted as to Claims Four, Five, and Six.

## V. CONCLUSION

Plaintiffs failed to respond to Defendants' allegations. This alone warrants judgment in Defendants' favor. Second, many of Plaintiffs' claims suffer from legal deficiencies. And those claims that are fact-based do not survive either because Plaintiffs have not submitted any evidence to contradict Defendants' recitation of the facts. As a result, Defendants' Motion for Summary Judgment is GRANTED.

## VI. ORDER

1. Defendants' Motion for Summary Judgment (Dkt. 16) is GRANTED.

2. The Court will enter a separate judgment in accordance with Federal Rule of Civil Procedure 58.

DATED: September 22, 2023

David C. Nye
Chief U.S. District Court Judge